**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**MICHAEL A. FISHER,**

      **Petitioner,**

   **v.**                           **CASE NO. 2:04-cv-622**
                                          **JUDGE MARBLEY**
**PAT HURLEY,**                        **MAGISTRATE JUDGE KEMP**

      **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the instant petition as amended, respondent's return of writ and supplemental return of writ, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

### I. FACTS

The Ohio Tenth District Court of Appeals summarized the facts of this case as follows:

> No serious doubt exists that appellant shot Keith Wilson. The case
> was tried on a defense theory that appellant shot in self-defense or in
> the defense of a third man, Carl Boehner.
>
> ***
>
> Keith Wilson was the second witness to testify at trial....
>
> When Keith Wilson testified in front of the jury, he acknowledged
> that he had stopped the vehicle being driven by his girlfriend when
> he saw Carl Boehner, a friend of appellant's. Wilson was angry with
> Boehner because Boehner had handed a gun to appellant during a

1

confrontation between Wilson and appellant a few days earlier. The gun apparently had been shot at Wilson five times as Wilson and his girlfriend were leaving the confrontation.

On the day Mr. Wilson was shot by appellant, Wilson had gotten out of the car in which he was riding and struck Boehner in the eye, knocking Boehner to the ground. Wilson testified that he (Wilson) then yelled into the apartment where appellant was located, following which appellant stepped outside and shot him (Wilson) five times. Wilson denied having a gun with him at the time he was shot.

The prosecution elicited a partial criminal record from Mr. Wilson, including convictions for retail fraud in Michigan in 1992 and aggravated assault in Franklin County, Ohio in 1999. Mr. Wilson acknowledged still being on probation on the aggravated assault charge.

\*\*\*

On cross-examination, Mr. Wilson acknowledged having a problem with alcohol use and drug abuse. He also admitted having been in fights while on probation. He admitted lying to police about striking Mr. Boehner. Mr. Wilson further admitted trying to avoid testifying against appellant.

\*\*\*

The trial court allowed inquiry about Mr. Wilson's being on probation and about his illegal conduct involving other assaults. The trial court ... limited inquiry about a separate indictment involving Mr. Wilson and one Dana Howard.

\*\*\*

In short, Keith Wilson's motive to paint himself as being as innocent as possible was demonstrated. However, that motive does not mean that appellant was acting in self-defense when he shot Mr. Wilson.
\*\*\*

No evidence demonstrated the existence of the mitigating conditions which distinguishes aggravated assault from felonious assault-namely, the existence of sudden passion or sudden fit of rage. Keith Wilson claimed a cold-blooded shooting. Appellant claimed a shooting out of fear of further harm to Mr. Boehner. No one claimed rage or passion.

2

***

> The testimony about the prior altercation between appellant and Keith Wilson was offered to demonstrate why Wilson stopped and assaulted Carl Boehner. The testimony was not offered as the basis for an argument that appellant shot at Mr. Wilson before appellant shot at him again. Indeed, appellant acknowledged shooting Wilson.

Exhibit 5 to Return of Writ.

## II. PROCEDURAL HISTORY

Petitioner was indicted by the January 7, 2000, term of the Franklin County grand jury on felonious assault, in violation of O.R.C. §2903.11 with a firearm specification. Exhibit 1 to Return of Writ. While represented by counsel, petitioner proceeded to jury trial, and on March 23, 2001, was found guilty, as charged. Exhibit 2 to Return of Writ. On May 10, 2001, petitioner was sentenced to an aggregate term of nine years. *Id*. Represented by new counsel, petitioner filed a timely appeal of his convictions to the Tenth District Court of Appeals. He raised the following assignments of error:

> 1. The trial court erred when it declined to charge the jury as to the lesser included offense of aggravated assault along with the "defense of another" as requested by the defense.
>
> 2. The court erred in allowing jurors to submit questions to witnesses, thus compromising their impartiality and thereby denying defendant his right to a fair trial.
>
> 3. The failure of defense counsel to object to the absence of a limiting instruction as to the jury's use of prior acts evidence amounted to ineffective assistance of counsel and denied defendant of a [sic] fair trial.
>
> 4. The court erred in refusing to allow the defense to impeach the State's witness by use of evidence of a pending indictment and probation status to show bias and interest in the case.

3

Exhibit 3 to Return of Writ.  On December 20, 2001, the appellate court affirmed the judgment of

the trial court.  Exhibit 5 to Return of Writ.  Still represented by counsel, petitioner filed a motion

to certify a conflict to the Ohio Supreme Court.  The motion was granted, and the following issue

was certified for appeal:

> Is the practice of a trial court of allowing members of a jury to submit
> questions to the court and attorneys for possible submission to
> witnesses per se prejudicial to a criminal defendant?

Exhibits 6 and 7 to Return of Writ.  On June 11, 2003, the Ohio Supreme Court affirmed the

judgment of the state appellate court.  Exhibit 13 to Return of Writ.  On March 27, 2006, petitioner

filed motion for delayed appeal with the Ohio Supreme Court of the remaining assignments of error

denied on direct appeal.  Exhibit 26 to Return of Writ.  On May 10, 2006, the Ohio Supreme Court

denied petitioner's motion for delayed appeal.  Exhibit 28 to Return of Writ.

On September 22, 2004, petitioner filed a *pro se* petition for post conviction relief with the

state trial court in which he asserted various allegations of ineffective assistance of trial counsel, that

"newly discovered evidence" established his innocence, and that he was denied a fair trial due to

improper jury instructions.  Exhibit 14 to Return of Writ.  On November 19, 2004, the trial court

denied the petition as untimely.  Exhibit 19 to Return of Writ.  Petitioner filed a timely appeal of the

trial court's decision to the state appellate court.  He asserted the following assignments of error:

> 1.  Was appellant unavoidably prevented from discovering the facts
> upon which he relied to file a petition for post conviction relief?
>
> 2.  Did trial counsel provide effective assistance at trial?
>
> 3.  Did jury instructions containing inference relieve prosecution of
> its burden of proof?

Exhibit 20 to Return of Writ.  On August 9, 2005, the state appellate court affirmed the judgment

of the trial court.  Exhibit 22 to Return of Writ.  Petitioner filed a timely appeal to the Ohio Supreme

Court, in which he raised the same propositions of law.  Exhibit 23 to Return of Writ.  On December

14, 2005, the Ohio Supreme Court summarily dismissed the appeal.  Exhibit 25 to Return of Writ.

On July 15, 2004, petitioner filed the instant *pro se* petition for a writ of habeas corpus.  He

initially asserted in his motion accompanying the initial petition that he was in the custody of the

respondent in violation of the Constitution of the United States based upon the following grounds,

repeated here verbatim:

> 1.  Trial court erred when it declined to charge jury with lesser
> included offense creating structural defect of trial in violation of
> petitioner's fourteenth amendment rights to due process of law.
>
> 2.  Trial Court erred in allowing jurors to submit questions to
> witnesses thereby becoming advocates, thus compromising their
> impartiality and denying petitioner his rights to a fair trial, in
> violation of his fourteenth amendment rights to due process of law.
>
> 3.  Trial Court erred in refusing to allow defense to impeach a state's
> witness through the use of evidence of pending indictment of witness
> thereby creating a denial of petitioner's rights to due process of law.
>
> 4. [I]neffective assistance of trial counsel in failing to request limiting
> instruction in violation of petitioner's Sixth Amendment rights under
> the U.S. Constitution.

On September 30, 2004, proceedings in this action were stayed pursuant to petitioner's request

pending his exhaustion of state court remedies.  Doc. No. 5.  On October 21, 2005, proceedings were

reactivated upon petitioner's notification that he had exhausted his state court remedies, and the

petition was amended to include his previously unexhausted claim of ineffective assistance of

counsel.  *See* Doc. No. 18. On March 29, 2006, proceedings again were stayed so that petitioner

could exhaust state court remedies as to his claims.  Doc. No. 27.  On August 21, 2006, petitioner

filed a notification of exhaustion, and proceedings again were re-activated.  Doc. Nos. 28, 29.

Petitioner's request for additional time to research and submit his "full" habeas petition was granted.

*Id.*  On November 6, 2006, petitioner filed an amended habeas corpus petition, in which he asserts as follows:

> 1.  The practice of a trial court of allowing members of a jury to submit questions to the court and attorneys for possible submission to witnesses is *per se* prejudicial to a criminal defendant.

> 2.  The evidence relied upon to file the post conviction motion was not discoverable any earlier than in the timeframe it was actually discovered.

> 3.  Defense counsel failed to put State's case to adequate adversarial test, thereby depriving petitioner of his right to due process of law as guaranteed by the Ohio and United States Constitutions.

> 4.  Jury instruction containing inference relieved the prosecution of its burden of proof, thereby depriving petitioner of his right to due process of law.

> 5.  The trial court erred by declining to charge jury with lesser included offense, creating structural defect and violating petitioner's Fourteenth Amendment right to due process of law.

> 6.  Trial court erred by refusing to allow defense to impeach state witness through use of pending indictment of that witness, thereby creating a denial of petitioner's due process of law [sic].

> 7.  Trial counsel was ineffective by failing to request limiting instruction be given the jury, in violation of petitioner's Sixth Amendment right.

It is the position of the respondent that claims two through seven are procedurally defaulted or without merit, and that claim one is without merit.

## III.  CLAIM TWO

In claim two, petitioner asserts that he was unable earlier to discover evidence presented in support of his petition for post conviction relief.  Such claim fails to present an issue appropriate for

federal habeas corpus review.  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)

> States "have no obligation to provide" post-conviction review under the Constitution. *Pennsylvania v. Finley*, 481 U.S. 551, 557, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) (citation omitted). Since states are not required to provide such review, federal courts have held that challenges to a state's post-conviction procedures are not cognizable as independent claims in habeas corpus proceedings, "unless state collateral review violates some independent constitutional right, such as the Equal Protection Clause." *Montgomery v. Meloy*, 90 F.3d 1200, 1206 (7th Cir.1996). This is because such claims "address collateral matters and not the underlying state conviction giving rise to the prisoner's incarceration." *Kirby v. Dutton*, 794 F.2d 245, 247, 248 (6th Cir.1986). *See also Body v. Watkins*, 51 Fed.Appx. 807, 810, 2002 WL 31323856 (10th Cir.2002) (holding that "state post-conviction delays do not give rise to independent due process claims that are cognizable under § 2254").

*Clark v. McLemore*, 291 F.Supp.2d 535, 542 (E.D. Michigan 2003).  .  Petitioner's allegations in claim two address a collateral matter that is unrelated to his detention.  *Kirby v. Dutton*, *supra,* 794 F.2d at 245.  This claim is therefore inappropriate for federal habeas corpus review.

## IV.  PROCEDURAL DEFAULT

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration.  28 U.S.C. §2254(b), (c).  If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies.  *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) *(per curiam)*; *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).  If, because of a procedural default, the

petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier*, 447 U.S. 478, 485 (1986); *Engle v. Issac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall,* 757 F.2d 94 (6th Cir. 1985).

In claim three, petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to present witnesses to testify that the victim, Keith Wilson, had a reputation for violence; failed effectively to cross-examine Wilson; failed properly to argue evidentiary issues during trial; and improperly had Wilson point out and describe his wounds in detail during cross-examination. In claim four, petitioner asserts that he was denied a fair trial due

8

to an improper jury instruction.  To the extent that the foregoing claims are readily apparent from the face of the record, such claims should have been raised on direct appeal, but were not.  Further, petitioner may now no longer present such claims to the state courts under Ohio's doctrine of *res judicata*.  *See State v. Cole,* 2 Ohio St.3d 112 (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967).  To the extent that the foregoing claims rely on matters not apparent from the record, such claims would be properly raised in a petition for post conviction relief pursuant to O.R.C. §2953.21.  Petitioner raised some of the allegations he now presents in claims three and four in his September 22, 2004, petition for post conviction relief; however, the state appellate court explicitly refused to consider the merits of his claims as barred under the Ohio's doctrine of *res judicata* and as untimely:

> Defendant-appellant, Michael Fisher ("appellant"), appeals from a judgment of the Franklin County Court of Common Pleas denying his motion for post conviction relief.  For the reasons that follow, we affirm.
>
> On April 5, 2000, the Franklin County Grand Jury indicted defendant-appellant for felonious assault with a firearm specification. Appellant entered a plea of not guilty and was subsequently tried in the Franklin County Court of Common Pleas.  At the conclusion of the trial, the jury returned a guilty verdict on the felonious assault charge and the firearm specification.  On December 20, 2001, this court affirmed appellant's conviction.  This court also certified a conflict on the issue of jurors asking questions to the Supreme Court of Ohio and the Supreme Court affirmed in *State v. Fisher* (2003), 99 Ohio St.3d 127.
>
> On September 22, 2004, appellant filed a motion for post conviction relief, which was denied by the trial court on November 18, 2004.  It is from this decision that appellant appeals.
>
> Appellant raises the following three assignments of error on appeal:
>
> Assignment of error number I:

Was appellant unavoidably prevented from discovering the facts upon which he relied to file a petition for post conviction relief?

Assignment of error number II:

Did trial counsel provide effective assistance at trial?

Assignment of error number III:

Did jury instrucio (sic) containing inference relieve prosecution of its burden of proof?

Pursuant to R.C. 2953.21(A), a defendant must file a petition for post conviction relief within 180 days after the expiration of the time for filing the appeal. Said transcript in this case was filed on July 9, 2001. Appellant did not file his motion for post conviction relief until September 22, 2004.

A trial court may entertain a motion for post conviction relief filed in excess of 180 days if a defendant can show that he or she was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present his or her claim, and the petitioner shows by clear and convincing evidence that, but for the constitutional error at trial, no reasonable fact finder would have found the petitioner guilty of the offense of which he or she was convicted. R.C. 2953.21(A)(2).

The trial court held that the only "newly discovered evidence" set forth by the appellant is evidence of the victim's reputation for violence, and that there is no evidence, or even an assertion by appellant, that he was unable to discover this evidence prior to the statutory deadline. We agree. All of the facts set forth by the appellant would have been known to him by the conclusion of the trial, and, therefore, known to him within the statutory time frame for filing a post conviction petition. Accordingly, we overrule appellant's first assignment of error.

Because we overrule appellant's first assignment of error the rest of appellant's assignments of error are rendered moot.

Exhibit 23 to Return of Writ. The state courts were never given an opportunity to enforce the

procedural rule on claims never presented to the state courts due to the nature of petitioner's

procedural default.  The Court deems the first and second parts of the *Maupin* test to have been satisfied as to claims three and four.

The Court must also decide whether the procedural rules at issue constitute adequate and independent bases upon which to foreclose review of the petitioner's federal constitutional claims. This task requires the Court to balance the state's interests behind each procedural rule against the federal interest in reviewing federal claims.  *See Maupin v. Smith*, 785 F.2d at 138.  Under this analysis, the procedural rules barring claims three and four constitute adequate and independent state grounds for denying relief.  The state courts must be given a full and fair opportunity to remedy alleged constitutional defects.  The time limitations for filing post conviction proceedings, and the requirement that all available claims be asserted at the first opportunity to do so serve the state's interests in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. Additionally, the doctrine of *res judicata* is stated in unmistakable terms in numerous Ohio decisions and Ohio courts have consistently refused to review claims on the merits under that doctrine.  *See State v. Cole, supra; State v. Ishmail, supra; State v. Perry, supra.*

In claim five, petitioner asserts that he was denied a fair trial because the trial court refused to issue a jury instruction on a lesser included offense.  In claim six, petitioner asserts that he was denied a fair trial because the trial court refused to permit him to impeach Wilson with evidence regarding a pending indictment.  In claim seven, petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to request a limiting instruction.  All of the foregoing claims are readily apparent from the face of the record, and were properly raised on direct appeal; however, petitioner failed to file a timely appeal of the appellate court's December 20, 2001, decision denying his appeal to the Ohio Supreme Court.  Instead, on March 27, 2006, petitioner filed

a motion for delayed appeal with the Ohio Supreme Court pursuant to Ohio Supreme Court Rule of

Practice II, Section 2(A)(4)(a), which provides:

> In a felony case, when the time has expired for filing a notice of
> appeal in the Supreme Court, the appellant may seek to file a delayed
> appeal by filing a motion for delayed appeal and a notice of appeal.
> The motion shall state the date of entry of the judgment being
> appealed and adequate reasons for the delay. Facts supporting the
> motion shall be set forth in an affidavit. A copy of the court of
> appeals opinion and the judgment entry being appealed shall be
> attached to the motion.

*Id.* On May 10, 2006, the Ohio Supreme Court summarily denied petitioner's motion for delayed

appeal.

In *Bonilla v. Hurley,* 370 F.3d 494, 497 (6 Cir.2004), the United States Court of Appeals for

the Sixth Circuit held that the Ohio Supreme Court's summary dismissal of a motion for delayed

appeal "constitutes a procedural ruling sufficient to bar federal court review" of petitioner's claims.

*Id.* Therefore, this Court likewise concludes that petitioner has procedurally defaulted claims five,

six, and seven of his federal habeas corpus petition.

Petitioner has procedurally defaulted claims three through seven. He can still secure review

of these claims if he demonstrates cause for his failure to follow the state procedural rules as well

as actual prejudice from the constitutional violations that he alleges. Petitioner has failed to

demonstrate either cause for his procedural default or actual prejudice resulting from the alleged

constitutional violation. In particular, this Court agrees that the evidence in support of all of these

claims, to the extent that any evidence beyond that already present in the record was needed to

support them, was known to petitioner well in advance of his untimely efforts to raise these claims.

Thus, he has not presented a valid excuse for his failure to follow Ohio's procedural rules.

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent*." Murray v. Carrier*, 477 U.S. at 491; *see also Sawyer v. Whitley*, 505 U.S. 333. After review of the record, the Court does not deem this to be such a case.

## V.  CLAIM ONE

In claim one, petitioner asserts that he was per se denied a fair trial because the trial court permitted members of the jury to submit questions to the trial court and to attorneys for possible submission to the witnesses. Upon a certification of conflict, the Ohio Supreme Court denied this claim as follows:

> On April 5, 2000, the Franklin County Grand Jury indicted defendant-appellant for felonious assault with a firearm specification. Appellant entered a plea of not guilty and was subsequently tried in the Franklin County Court of Common Pleas. Prior to the presentation of evidence, the trial court informed the jurors that they would be permitted to ask questions of the witnesses that testified at trial. The trial judge instructed the jurors to submit their questions in writing to the bailiff, whereupon the judge and the attorneys would review the questions in a sidebar conference. The trial judge would then determine whether the questions were admissible under the rules of evidence and would read the admissible questions aloud to the witnesses.
>
> In accordance with the foregoing procedure, the jurors submitted 23 questions to six of the eight witnesses that testified at trial. The trial court disallowed five questions on evidentiary grounds and rephrased two questions for clarification. After reading a juror question, the trial court allowed the prosecution and defense counsel an opportunity to ask followup questions. Although defense counsel did not object to the particular questions that were read to the witnesses, counsel entered a continuing objection to the general practice of allowing jurors to submit questions.
>
> At the conclusion of the trial, the jury returned a guilty verdict on the felonious assault charge and the firearm specification. Appellant appealed from his conviction to the Tenth District Court of Appeals,

alleging that the practice of allowing jurors to question witnesses is "inherently prejudicial." The court of appeals affirmed the conviction and certified its judgment to be in conflict with that of the First District Court of Appeals in *State v. Gilden* (2001), 144 Ohio App.3d 69, 759 N.E.2d 468.

The cause is now before this court upon our determination that a conflict exists.

II

The court of appeals certified the following issue for our determination: "Is the practice of a trial court of allowing members of a jury to submit questions to the court and attorneys for possible submission to witnesses *per se* prejudicial to a criminal defendant?" (Italics sic.) A proper analysis of this issue requires (1) a clarification of the certified issue, (2) a survey of decisions from other *129 jurisdictions, and (3) an examination of the effect of juror questioning on the trial court proceeding. We consider each aspect of our analysis separately.

A. Clarification of the Certified Issue

As a preliminary matter, we note that the issue of whether juror questioning is "prejudicial" assumes that such questioning is error. Crim.R. 52(A), which governs the criminal appeal of a nonforfeited error, provides that "[a]ny *error * * * which does not* *affect substantial rights* shall be disregarded." (Emphasis added.) Thus, Crim.R. 52(A) sets forth two requirements that must be satisfied before a reviewing court may correct an alleged error. First, the reviewing court must determine whether there was an "error"**225 -*i.e.*, a "[d]eviation from a legal rule." *United States v. Olano* (1993), 507 U.S. 725, 732-733, 113 S.Ct. 1770, 123 L.Ed.2d 508. Second, the reviewing court must engage in a specific analysis of the trial court record-a so-called "harmless error" inquiry-to determine whether the error "affect[ed] substantial rights" of the criminal defendant. This language has been interpreted to "mean[ ] that the error must have been *prejudicial:* It must have affected the outcome of the [trial] court proceedings." (Emphasis added.) Id. at 734, 113 S.Ct. 1770, 123 L.Ed.2d 508. Consequently, we must determine that the practice of allowing jurors to question witnesses is error before we consider whether the practice is prejudicial.

Even assuming that the practice of allowing juror questioning is

14

error, we note that the certified issue is *not* whether the practice was merely prejudicial in the instant matter. Rather, the certified issue is whether the practice of allowing juror questioning is "per se prejudicial." In the context of this case, the phrase "per se prejudicial" can be interpreted one of two ways: (1) juror questioning is "inherently" prejudicial-*i.e.*, it *always* affects the outcome of a trial, or (2) juror questioning, although not always affecting the outcome of a trial, should give rise to a *conclusive presumption* of prejudice as a matter of law. The first of these interpretations, however, is surely wrong. As appellant conceded at oral argument, "I will not tell this court, and I won't presume to try to convince you, that that process is one that * * * affects all jurors, or it is one that we can sit and point to prejudice in each and every situation." Indeed, the fact that a defendant may actually *benefit* from juror questioning renders such an argument unpersuasive.

Given that appellant does not argue that juror questioning is "inherently" prejudicial, we construe appellant's use of the phrase "per se prejudicial" to suggest that a reviewing court should conclusively presume prejudice in cases in which juror questioning is permitted. We note, however, that the *type of error* that gives rise to such a presumption is more properly characterized as a "structural error." In *Arizona v. Fulminante* (1991), 499 U.S. 279, 306-312, 111 S.Ct. 1246, 113 L.Ed.2d 302, the United States Supreme Court denominated the two types of constitutional errors that may occur in the course of a criminal proceeding-"trial errors," which are reviewable for harmless error, and "structural errors," which are per se cause for reversal. *See State v. Esparza* (1996), 74 Ohio St.3d 660, 661-662, 660 N.E.2d 1194. "Trial error" is "error which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Fulminante,* 499 U.S. at 307-308, 111 S.Ct. 1246, 113 L.Ed.2d 302. "Structural errors," on the other hand, "defy analysis by 'harmless error' standards" because they "affect[ ] the framework within which the trial proceeds, rather than simply [being] an error in the trial process itself.' " *Id*. at 309 and 310, 111 S.Ct. 1246, 113 L.Ed.2d 302. Consequently, a structural error *mandates* a finding of "per se prejudice." *See Campbell v. Rice* (C.A.9, 2002), 302 F.3d 892, 900 ("We * * * conclude that [the relevant error] amounted to a structural error, mandating a finding of prejudice per se").

Notwithstanding the logical nexus between a structural error and a

15

finding of "per se prejudice," appellant's exclusive reliance on a "per se prejudicial" theory leads him to disregard the substantial body of case law that has delineated the parameters of the structural error doctrine. *See State v. Hill* (2001), 92 Ohio St.3d 191, 196-197, 749 N.E.2d 274 (summarizing United States Supreme Court jurisprudence regarding structural error). In the future, therefore, we encourage litigants and reviewing courts to analyze whether a constitutional error is cause for automatic reversal in the context of whether the error is "structural." Accordingly, appellant's "per se prejudice" argument-that juror questioning can never be harmless under Crim.R. 52(A)-is more appropriately characterized as alleging a structural error.

With the foregoing in mind, we survey decisions from other jurisdictions for guidance on the propriety of juror questioning.

### B. Other Jurisdictions

Although this court has not previously addressed the issue of whether jurors should be permitted to question witnesses in civil or criminal cases, courts in other jurisdictions have generally held that the practice is a matter committed to the sound discretion of the trial court. The primary disagreement in this area centers on whether-and to what extent-appellate courts should encourage or discourage the practice of allowing jurors to question witnesses. A brief review of these cases is therefore appropriate in resolving (1) whether juror questioning of witnesses should be a matter within the discretion of the trial court, and (2) if so, the extent to which this court should endorse the practice.

Every federal circuit that has addressed the issue has concluded that the practice of allowing jurors to question witnesses is a matter within the discretion of the trial court.[FN1] Several of the federal circuits, however, discourage the practice of allowing jurors to question witnesses. *See, e.g.*, *Feinberg,* 89 F.3d at 336 ("We agree that the practice is acceptable in some cases, but do not condone it"). Other federal circuits, by contrast, liberally permit such questioning. *See, e.g.*, *Callahan,* 588 F.2d at 1086 ("If a juror is unclear as to a point in the proof, it makes good common sense to allow a question to be asked about it").

FN1. *See United States v. Sutton* (C.A.1, 1992), 970 F.2d 1001, 1005; *United States v. Bush* (C.A.2, 1995), 47 F.3d 511, 514-515; *United States v. Hernandez* (C.A.3, 1999), 176 F.3d 719, 723; *DeBenedetto v. Goodyear Tire & Rubber Co.* (C.A.4, 1985), 754 F.2d 512, 516

16

(civil); *United States v. Callahan* (C.A.5, 1979), 588 F.2d 1078, 1086, fn. 2; *United States v. Collins* (C.A.6, 2000), 226 F.3d 457, 461-465; *United States v. Feinberg* (C.A.7, 1996), 89 F.3d 333, 337; *United States v. Lewin* (C.A.8, 1990), 900 F.2d 145, 147; *United States v. Gonzales* (C.A.9, 1970), 424 F.2d 1055; *Willner v. Soares* (Feb. 5, 2003), C.A.10, No. 02-1352, 2003 WL 254327; *United States v. Richardson* (C.A.11, 2000), 233 F.3d 1285, 1288-1291; *Dobbins v. United States* (C.A.D.C.), 157 F.2d 257, 260.

The vast majority of state courts have also concluded that juror questioning is a matter committed to the sound discretion of the trial court. FN2 Further, a review of early state court decisions reveals that juror questioning is a long-standing practice in American courtrooms. As early as 1895, state courts began "plac[ing their] stamp of approval upon the practice of * * * jurors interrogating witnesses in an endeavor to ascertain the facts" in civil cases. *White v. Little* (1928), 131 Okla. 132, 134, 268 P. 221, citing *Schaefer v. St. Louis & S. Ry. Co.* (1895), 128 Mo. 64, 30 S.W. 331. By 1930, the Supreme Courts of Illinois, Missouri, North Carolina, South Carolina, Kentucky, Pennsylvania, and Oklahoma had approved the practice of allowing jurors to examine witnesses or otherwise concluded that the practice did not constitute reversible error. *Chicago, Milwaukee & St. Paul Ry. Co. v. Harper* (1889), 128 Ill. 384, 21 N.E. 561 (civil); *Schaefer,* 128 Mo. 64, 30 S.W. 331 (civil); *State v. Kendall* (1907), 143 N.C. 659, 57 S.E. 340; *State v. Bradford* (1911), 87 S.C. 546, 70 S.E. 308; *Boggs v. Jewell Tea Co.,* 266 Pa. 428, 109 A. 666 (civil); *Louisville Bridge & Terminal Co. v. Brown* (1925), 211 Ky. 176, 277 S.W. 320 (civil); *White,* 131 Okla. at 132, 268 P. 221 (civil).

FN2. *See, e.g.*, *Prather v. Nashville Bridge Co.* (1970), 286 Ala. 3, 4-5, 236 So.2d 322 (civil); *Linden v. State* (Alaska 1979), 598 P.2d 960, 962-963; *State v. LeMaster* (1983), 137 Ariz. 159, 163-164, 669 P.2d 592; *Nelson v. State* (1974), 257 Ark. 1, 4, 513 S.W.2d 496; *People v. McAlister* (1985), 167 Cal.App.3d 633, 643-646, 213 Cal.Rptr. 271; *Gurliacci v. Mayer* (1991), 218 Conn. 531, 559-560, 590 A.2d 914 (civil); *Yeager v. Greene* (D.C.1985), 502 A.2d 980, 985-986; *Ferrara v. State* (Fla.1958), 101 So.2d 797, 801; *State v. Culkin* (2001), 97 Hawaii 206, 225-226, 35 P.3d 233; *Carter v. State* (1968), 250 Ind. 13, 234 N.E.2d 650; *Rudolph v. Iowa Methodist Med. Ctr.* (Iowa 1980), 293 N.W.2d 550, 555-556 (civil); *State v. Hays* (1994), 256 Kan. 48, 61, 883 P.2d 1093; *Transit Auth. of River City v. Montgomery* (Ky.1992), 836 S.W.2d 413, 416 (civil); *Commonwealth v. Urena* (1994), 417 Mass. 692, 701-702, 632 N.E.2d 1200; *People*

*v. Heard* (1972), 388 Mich. 182, 186-188, 200 N.W.2d 73; *Callahan v. Cardinal Glennon Hosp.* (Mo.1993), 863 S.W.2d 852, 867 (civil); *State v. Graves* (1995), 274 Mont. 264, 270, 907 P.2d 963; *Flores v. State* (1998), 114 Nev. 910, 912-913, 965 P.2d 901; *State v. Jumpp* (1993), 261 N.J.Super. 514, 530, 619 A.2d 602; *State v. Rodriguez* (1988), 107 N.M. 611, 614, 762 P.2d 898; *People v. Bacic* (1994), 202 A.D.2d 234, 235, 608 N.Y.S.2d 452; *State v. Howard* (1987), 320 N.C. 718, 725-727, 360 S.E.2d 790; *Krause v. State* (1942), 75 Okla.Crim. 381, 386, 132 P.2d 179; *Boggs v. Jewell Tea Co.* (1920), 266 Pa. 428, 434, 109 A. 666 (civil); *Day v. Kilgore* (1994), 314 S.C. 365, 444 S.E.2d 515 (civil); *Byrge v. State* (Tenn.Crim.App.1978), 575 S.W.2d 292, 295; *State v. Martinez* (1958), 7 Utah 2d 387, 389, 326 P.2d 102; *State v. Parker* (1988), 149 Vt. 393, 405, 545 A.2d 512 (civil); *Williams v. Commonwealth* (1997), 24 Va.App. 577, 484 S.E.2d 153; *State v. Munoz* (1992), 67 Wash.App. 533, 837 P.2d 636; *Sommers v. Friedman* (1992), 172 Wis.2d 459, 473-478, 493 N.W.2d 393 (civil).

Judicial approval of this long-established practice is no less pervasive today. *See State v. Costello* (Minn.2002), 646 N.W.2d 204, 209 (noting that juror questioning is supported by the American Bar Association, federal courts, and the majority of state courts). Nevertheless, several jurisdictions permit juror questioning only where procedural safeguards are employed. See, e.g., *LeMaster,* 137 Ariz. at 164-165, 669 P.2d 592; *Gurliacci,* 218 Conn. at 560-561, 590 A.2d 914; *Rudolph,* 293 N.W.2d at 556 (Iowa); *Graves,* 274 Mont. at 270-271, 907 P.2d 963; *Jumpp,* 261 N.J.Super. at 531-533, 619 A.2d 602; *Munoz,* 67 Wash.App. at 536-538, 837 P.2d 636. Other jurisdictions have relegated the procedure by which jurors submit questions to the discretion of the trial court. *Nelson,* 257 Ark. at 4, 513 S.W.2d 496; *Montgomery,* 836 S.W.2d at 416 (Kentucky); *Heard,* 388 Mich. at 187, 200 N.W.2d 73; *Krause,* 75 Okla.Crim. at 387, 132 P.2d 179.

Only five jurisdictions prohibit jurors from questioning witnesses. *See Costello,* 646 N.W.2d at 214 (Minnesota) (prohibiting juror questioning in criminal trials); *Wharton v. State* (Miss.1998), 734 So.2d 985, 990; *State v. Zima* (1991), 237 Neb. 952, 956, 468 N.W.2d 377; *Morrison v. State* (Tex.Crim.App.1992), 845 S.W.2d 882, 889 (prohibiting juror questioning in criminal trials); *Matchett v. State* (1988), 257 Ga. 785, 786, 364 S.E.2d 565. Among these jurisdictions, however, Georgia, Mississippi, and Nebraska have concluded that such error may be either forfeited or harmless beyond

18

a reasonable doubt. *Matchett,* 257 Ga. at 786, 364 S.E.2d 565; *Wharton,* 734 So.2d at 990; *Zima,* 237 Neb. at 956-957, 468 N.W.2d 377. Consequently, only two states-Texas and Minnesota-have held that juror questioning is not subject to harmless error analysis. See *Morrison,* 845 S.W.2d at 889; *Costello,* 646 N.W.2d at 215.

Against this backdrop, we turn to the instant case.

## III

Appellant argues, in effect, that the practice of allowing jurors to question witnesses is a "structural error." In determining whether an alleged error is "structural," our threshold inquiry is whether such error "involves the deprivation of a constitutional right." *State v. Issa,* 93 Ohio St.3d 49, 74, 752 N.E.2d 904 (Cook, J., concurring); see *Esparza,* 74 Ohio St.3d at 662, 660 N.E.2d 1194 ("[T]he trial-error/structural-error distinction is irrelevant unless it is first established that *constitutional* error has occurred"). (Emphasis sic.) To that end, appellant argues that juror questioning violates the right to an impartial jury under Section 10, Article I of the Ohio Constitution and the Sixth Amendment to the United States Constitution. Resolution of this issue requires us to examine the effect of juror questioning on the trial court proceeding.

The hallmark of the American trial is the pursuit of truth. Such truth-and, in the end, justice-is attainable only if counsel successfully communicates evidence to the jury. History has nonetheless relegated the jury to a passive role that dictates a one-way communication system-a system that, in its traditional form, is not amenable to resolving juror confusion. The practice of allowing jurors to question witnesses provides for two-way communication through which jurors can more effectively fulfill their fundamental role as factfinders.

In *United States v. Callahan,* 588 F.2d at 1086, the United States Court of Appeals for the Fifth Circuit articulated the paramount benefit of such communication: "There is nothing improper about the practice of allowing occasional questions from jurors to be asked of witnesses. If a juror is unclear as to a point in the proof, it makes good common sense to allow a question to be asked about it. If nothing else, the question should alert trial counsel that a particular factual issue may need more extensive development. Trials exist to develop truth. It may sometimes be that counsel are so familiar with a case that they fail to see problems that would naturally bother a juror who is presented with the facts for the first time."

19

Juror questioning not only enhances the ability of jurors to discern truth but also may provide counsel an opportunity to better comprehend jurors' thought processes and their perception of case weaknesses. *Flores,* 114 Nev. at 912, 965 P.2d 901. Recognizing a similar advantage of juror questioning, the United States Court of Appeals for the District of Columbia has observed: "Questions by jurors also may bring to the court's and counsel's attention *improper* concerns which can be promptly addressed with cautionary instructions, admonishing the juror who asked the question that the matter is not relevant to the case and should not be brought to the attention of other jurors or play any part in the inquiring juror's consideration of the case." (Emphasis sic.) *Yeager,* 502 A.2d at 998.

Furthermore, the practice of allowing jurors to question witnesses may increase juror attentiveness at trial. *Flores,* 114 Nev. at 912, 965 P.2d 901. The D.C. Court of Appeals, acknowledging such a benefit, has observed that "there is reason to believe that permitting receivers of information, *e.g.,* jurors, to ask questions enhances not only their ability to understand what is being communicated, but results in their putting forth more effort to listen and to understand because they *know* they may ask questions. A concomitant benefit predictable from these effects might well be a reduced likelihood that the court will be required to intervene to question witnesses or elucidate issues that are clarified by juror questions." (Emphasis sic.) *Yeager,* 502 A.2d at 998-1000.

Finally, empirical research suggests that jurors who are allowed to question witnesses are more satisfied with their service and more confident with their verdicts. Berkowitz, Breaking the Silence: Should Jurors Be Allowed to Question Witnesses During Trial? (1991), 44 Vand.L.Rev. 117, 141. As one Ohio jurist has noted, "Allowing jurors to ask questions makes jurors feel more like a part of the judiciary, and less like helpless outsiders trying to penetrate a sanctimonious institution. This type of change can only bring us closer to the ultimate goal of our legal system: justice." Valen, Jurors Asking Questions: Revolutionary or Evolutionary? (1993), 20 N.Ky.L.Rev. 423, 439.

Although we are cognizant of the potential benefits of juror questioning, we are also mindful of the concerns associated with the practice. Courts have identified four principal dangers inherent in juror questioning: (1) jurors may submit inadmissible questions, (2) counsel may refrain from objecting to improper questions for fear of

offending jurors, (3) juror interruptions may disrupt courtroom decorum, and (4) such questioning may distort juror impartiality. *Spitzer v. Haims & Co.* (1991), 217 Conn. 532, 546-547, 587 A.2d 105. The extent to which these dangers affect the trial process depends, in great part, upon the manner in which such questioning is conducted. *Culkin,* 97 Hawaii at 206, 35 P.3d 233.

In the instant case, the procedural safeguards applied by the trial court operated to circumvent many of the foregoing dangers. These safeguards included (1) requiring the jurors to submit their questions in writing to the court, whereupon the judge could review and exclude improper questions, (2) providing counsel an opportunity to object at sidebar, thereby eliminating the danger that a juror would be affronted by an objection, and (3) specifying the precise time at which jurors should submit questions to prevent interference with attorney questioning and courtroom decorum.

The final concern associated with juror questioning lies in the potential distortion of the adversary system. Appellant argues that "by allowing jurors to question witnesses, the role of the jury is fundamentally changed" from neutral factfinder to partial advocate. Such an argument, however, rests on the erroneous premise that one must be passive to be impartial. To the contrary, Evid.R. 614(B) expressly authorizes the trial court-the factfinder in a bench trial-to "interrogate witnesses, in an impartial manner, whether called by itself or by a party." Consequently, the ability of a factfinder to question witnesses is not inconsistent with the duty of impartiality.

Having determined that jurors may submit questions and, at the same time, maintain impartiality, we conclude that the mere *possibility* that a juror may submit a biased question or engage in premature deliberation does not violate the Ohio or United States Constitution. The issue of whether juror questions are aimed at advocacy rather than clarification cannot be answered in the abstract, but instead requires courts to examine the nature of each question in the overall context of a trial. We conclude that the trial court is in the best position to render such a determination and, within its sound discretion, disallow improper juror questions.

Given that the practice of allowing jurors to question witnesses is not a constitutional error, it follows that the practice cannot be a structural error. See *Issa,* 93 Ohio St.3d at 74, 752 N.E.2d 904 (Cook, J., concurring). Consequently, we answer the certified issue in the negative. We further note that appellant cites no binding authority-

21

and we are aware of none-for the proposition that juror questioning is a *non*constitutional error. Evid.R. 611(A), contrary to such a proposition, grants the trial court discretion to "exercise reasonable control over the *mode* and order of interrogating witnesses and presenting evidence so as to * * * make the interrogation and presentation effective for the ascertainment of the truth." (Emphasis added.) Accordingly, we conclude that the practice of allowing jurors to question witnesses is not error-constitutional or otherwise-under Crim.R. 52(A).

For the foregoing reasons, we hold that the practice of allowing jurors to question witnesses is a matter committed to the discretion of the trial court. To minimize the danger of prejudice, however, trial courts that permit juror questioning should (1) require jurors to submit their questions to the court in writing, (2) ensure that jurors do not display or discuss a question with other jurors until the court reads the question to the witness, (3) provide counsel an opportunity to object to each question at sidebar or outside the presence of the jury,[FN3] (4) instruct jurors that they should not draw adverse inferences from the court's refusal to allow certain questions, and (5) allow counsel to ask followup questions of the witnesses.

FN3. As the Supreme Judicial Court of Massachusetts has noted, "the [trial] judge should rule on any objections [when counsel objects at sidebar], including any objection that the question touches on a matter that counsel purposefully avoided as a matter of litigation strategy, and that, if asked, will cause particular prejudice to the party." *Commonwealth v. Britto* (2001), 433 Mass. 596, 614, 744 N.E.2d 1089.

Our nation's profound commitment to trial by jury is founded on competing principles that, in one sense, foster the development of truth and, in another sense, stifle it. Such is the great paradox of the criminal justice system. To balance these principles in the assortment of cases with which a trial court is faced-dissimilar as one case is from another-appellate courts generally defer to the discretion of the trial court, rather than attempting to account for the infinite array of circumstances that may arise with a categorical rule. A less prudent approach would eviscerate that discretion at the first sign of abuse-or, worse yet, at the mere potential for it. Our decision today refrains from adopting such a rule.

IV

Accordingly, we hold that the decision to allow jurors to question witnesses is a matter within the discretion of the trial court and should not be disturbed on appeal absent an abuse of that discretion. The judgment of the court of appeals is affirmed.

*State v.Fisher*, 99 Ohio St.3d 127 (2003), Exhibit 13 to Return of Writ.

The Ohio Supreme Court's decision is presumed to be correct:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(d), (e).

A state court's determination is contrary to federal law when the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or on indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an unreasonable application of federal law when the state court correctly identified the applicable legal principle from Supreme Court precedent, but applied that

23

> principle to the facts before it in an unreasonable manner. *Id.* at 413,
> 120 S.Ct. 1495.

*Maldonado v. Wilson*, 416 F.3d 470, 475 (6th Cir. 2005).  Petitioner simply has failed to establish

that the Ohio Supreme Court's decision rejecting his claim is so unreasonable as to warrant federal

habeas corpus review.

      Petitioner has not referred to, and the Court is not aware of, any cases of the United States

Supreme Court holding that the procedure of allowing jurors to submit questions at a criminal trial

constitutes a structural error that mandates reversal of a defendant's convictions.  Thus, it does not

appear that petitioner can satisfy the requirement of 28 U.S.C. 28 U.S.C. §2254(d)(1) in order to

warrant federal habeas corpus relief.  *See Williams v. Taylor*, 529 U.S. at 381-82.  Further, as noted

by the Ohio Supreme Court, the United States Court of Appeals for the Sixth Circuit has held that

such practice is permissible in federal criminal trials:

> [T]here will be occasions when a district court may determine that the
> potential benefits to allowing such questions will outweigh the risks.
> Even cases that could not be described as complex may occasionally
> warrant questions by jurors, although we think that the balance of
> risks to benefits is more likely to weigh in favor of juror questions in
> complex cases.

*United States v. Collins*, 226 F.3d 457, 463 (6th Cir. 2000).  The Sixth Circuit in *Collins* outlined the

practice that should be followed by federal courts in permitting juror questions at trial:

> Allowing juror questions should not become a routine practice, but
> should occur only rarely after the district court has determined that
> such questions are warranted. In exercising their discretion, trial
> judges must weigh the potential benefits of juror questioning against
> the possible risks and, if the balance favors juror questions, employ
> measures to minimize the risks. When a court decides to allow juror
> questions, counsel should be promptly informed. At the beginning of

the trial, jurors should be instructed that they will be allowed to submit questions, limited to important points, and informed of the manner by which they may do so. The court should explain that, if the jurors do submit questions, some proposed questions may not be asked because they are prohibited by the rules of evidence, or may be rephrased to comply with the rules. The jurors should be informed that a questioning juror should not draw any conclusions from the rephrasing of or failure to ask a proposed question. Jurors should submit their questions in writing without disclosing the content to other jurors. The court and the attorneys should then review the questions away from the jurors' hearing, at which time the attorneys should be allowed an opportunity to present any objections. The court may modify a question if necessary. When the court determines that a juror question should be asked, it is the judge who should pose the question to the witness.

We also think it would be wise for a district court to consider several additional issues. The court should consider whether it wishes to allow counsel an opportunity to re-question a witness after a juror question has been posed. *See DeBenedetto,* 754 F.2d at 515 n. 1 (noting that counsel were given the opportunity to re-question each witness after all inquiries from the jury were resolved). The prudence of allowing such re-questioning will depend on the circumstances of each case. Furthermore, while jurors generally should not be allowed to submit questions until the end of a witness' testimony, a court may occasionally determine that questions properly could be posed in the midst of testimony, such as when a witness testifies at great length on a number of topics, or when a witness is testifying as to a technically complex matter. Finally, a court should consider whether final instructions should specifically address juror questions.

*Id.*, at 464-65.  Failure to implement any cautionary measures when permitting juror questions at trial is subject to harmless error analysis.  *United States v. Ricketts*, 317 F.3d 540, 546 (6th Cir. 2003).

Contrary to petitioner's allegations here, the record fails to reflect either that the trial court's decision to permit juror questions constituted structural error, or that petitioner was prejudiced thereby.

Claim one is without merit.

## VI.

For all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be

**DISMISSED**.

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge
